UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:13-CR-20-GFVT-HAI-25 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| ANNA DAVIS, ) | |
| ) | |
| Defendant. ) | |

*** *** *** ***

The Court, on referral, considers reported supervised release violations by Defendant Anna Marie Davis. *See* D.E. 1380 at 2; *see also* D.E. 1387. District Judge Van Tatenhove entered a judgment against Defendant on July 15, 2014, following a plea of guilty to a violation of 21 U.S.C. § 846, conspiracy to manufacture a detectable amount of a mixture or substance containing methamphetamine. D.E. 678. Defendant was originally sentenced to twenty-four months of imprisonment followed by three years of supervised release. *Id.* at 2–3.

Defendant was released from custody to begin service of her three-year term of supervised release on February 6, 2015. On February 1, 2016, the United States Probation Office submitted, and the Court approved, a Report on Offender Under Supervision requesting that no action be taken for Defendant's arrest for public intoxication and her admission to the use of controlled substances. D.E. 1029. Defendant was placed in an intensive outpatient drug treatment program which she successfully completed. On January 3, 2017, Defendant's supervised release was revoked following violations for the use of controlled substances, attempted tampering with drug testing, and three counts of commission of a crime. D.E. 1094. Defendant was sentenced to six months of imprisonment followed by three years of supervised release. D.E. 1095. Defendant

was released to begin her second term of supervision on May 30, 2017. Officer Biggs of the United States Probation Office ("USPO") reported on June 21, 2019, that Defendant was held against her will by her boyfriend, who assaulted and forcibly injected methamphetamine into Defendant's body. Judge Van Tatenhove approved that Defendant continue serving her term of supervision. D.E. 1273. On December 4, 2019, the USPO reported that Defendant had unlawfully used Suboxone prior to receiving a prescription for it. D.E. 1340. Judge Van Tatenhove approved that no action be taken, and Defendant was enrolled in intensive outpatient treatment. *Id*.

On May 1, 2020, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings and secured a summons for Defendant's initial appearance on the alleged violations. D.E. 1380. Prior to Defendant's scheduled initial appearance, the USPO sought an arrest warrant on May 15, 2020, and issued an Addendum to the Report on May 18, 2020 charging Defendant with additional violations of her supervised release. D.E. 1383. Defendant was arrested on May 18, 2020. The Report[1] charges Defendant with eight violations stemming from her unlawful use of controlled substances and failure to be truthful with her probation officer.

Violation #1 alleges Defendant violated the condition requiring her to refrain from any unlawful use of a controlled substance after she tested positive for the use of methamphetamine on March 20, 2020. The drug test was conducted through Denova Addiction Services where Defendant was participating in Suboxone treatment. Defendant denied the use of methamphetamine around that date. This is a Grade C violation. Violation #2 alleges Defendant violated the condition that requires her not to commit another federal, state, or local crime. The Sixth Circuit has held that use is the equivalent of possession, and, given Defendant's criminal history, the simple possession of methamphetamine constitutes conduct in violation of 21 U.S.C.

---

[1] Hereinafter, references to the Report encompass the May 18, 2020 Addendum.

2

§ 844(a), a Class E felony. This is a Grade B violation. Violation #3 alleges Defendant violated the condition that she refrain from any unlawful use of a controlled substance. On April 21, 2020, Officer Biggs received notice that Defendant had contact with the Paris Police Department after a domestic dispute with her ex-boyfriend. Defendant was questioned regarding her drug use "and admitted [in writing] to taking 'one hit' off a marijuana joint on April 21 during the domestic dispute." This is a Grade C violation. Violation #4 alleges Defendant violated the condition requiring that she not commit another federal, state, or local crime after her admission to the use of marijuana on April 21, 2020. The Sixth Circuit has held that use is the equivalent of possession, and, given Defendant's criminal history, the simple possession of marijuana constitutes conduct in violation of 21 U.S.C. § 844(a), a Class E felony. This is a Grade B violation.

Violations #5 and #6 allege that Defendant violated the conditions requiring that she answer truthfully questions asked by her probation officer and that she refrain from obstructing or attempting to obstruct or tamper with the efficiency and accuracy of substance abuse testing. As to these allegations, the Report alleges:

> On May 15, 2020, during a home visit at Ms. Davis' residence, she was asked to submit to a urinalysis. The instant test results were positive for buprenorphine, due to a prescription. During the urinalysis, the undersigned officer observed Ms. Davis acting odd and put the test cup between her legs in a manner that is not consistent with drug testing. After submitting to the urinalysis, Ms. Davis returned to her couch and attempted to cover up with a blanket. At this time, she was observed with her hands between her legs.
>
> Ms. Davis was questioned as to if she had attempted to cover up illegal drug use by submitting someone else's urine and Ms. Davis stated no. Ms. Davis went on to say that to her knowledge, she had not used any illegal substances. A saliva drug test (T-Cube), was subsequently administered to Ms. Davis. The results of this test were positive for methamphetamines.
>
> Once again, Ms. Davis was questioned about submitting someone else's urine for the test that was previously administered. Initially she denied using someone else's urine but eventually admitted that she had obtained another person's

      urine for the purpose of attempting to pass a drug screen. Ms. Davis then removed a bottle containing urine from inside herself.

Both Violations #5 and #6 are Grade C violations.

      Violation #7 alleges that Defendant violated the condition requiring that she refrain from any unlawful use of a controlled substance. Defendant submitted to a second urinalysis test on May 15, 2020, that was "sent to Alere Laboratory for testing."[2] Defendant admitted to using methamphetamine on two occasions on May 8, 2020, and signed an admission form to that effect. This is a Grade C violation. Violation #8 alleges Defendant violated the condition requiring that she not commit another federal, state, or local crime based on her admission to twice using methamphetamine on May 8, 2020. The Sixth Circuit has held that use is the equivalent of possession, and, given Defendant's criminal history, the simple possession of methamphetamine constitutes conduct in violation of 21 U.S.C. § 844(a), a Class E felony. This is a Grade B violation.

## I.

      The Court conducted an initial appearance, via videoconference, pursuant to Federal Rule of Criminal Procedure 32.1 on May 21, 2020. D.E. 1393.[3] During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of her right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant requested release to inpatient drug treatment. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

---

[2] Officer Biggs reported to the undersigned that Alere reported that the second urinalysis sample taken on May 15, 2020 yielded negative results.

[3] Pursuant to General Orders 20-05 and 20-07, Defendant consented to having her initial appearance and final hearing conducted via videoconference in light of the COVID-19 pandemic and social distancing guidelines.

At the final hearing, via videoconference, on May 26, 2020, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 1397. Defendant waived a formal hearing and stipulated to Violations #3 through #8 as set forth in the Report. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The United States orally moved to dismiss Violations #1 and #2. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that she engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

During the final hearing, the parties disagreed as to the sentence. The government argued for revocation with fourteen months of imprisonment and no supervised release to follow. Defendant argued for revocation with two months of imprisonment, followed by release to the Chrysalis House for inpatient treatment.

The government's argument focused on the breach of the Court's trust, the need to deter future conduct, and the need to protect the public. The government pointed to Defendant's history of non-compliance on supervised release. The government explained that, in February 2016 she was arrested for public intoxication and revocation was not sought, and that, in January 2017, Defendant's supervised release was revoked after she used controlled substances and tampered with drug testing, similar to the conduct at issue now. The government further noted that Defendant tested positive for use in 2019 and was enrolled in a twelve-week outpatient treatment program. The government argued that the deceit and drug test tampering by Defendant are most

5

concerning. Further, the government argued that the six-month downward departure Defendant benefited from at the time of her original sentence warranted a revocation sentence outside the Guidelines Range. The government expressed that, given the number of times Defendant has committed violation conduct and been aided by the USPO in seeking treatment, no further options exist to help Defendant going forward and that, in its view, treatment in lieu of incarceration is unwarranted.

The defense's argument relied on Defendant's history and characteristics and her need for additional treatment. Defense counsel relayed the series of events that have occurred since Defendant moved to Paris, Ky on March 1, 2020 for a job, which she was unable to begin due to the COVID-19 pandemic. Defense counsel explained that Defendant turned to her ex-boyfriend, who has abused her in the past, to support her and their child, as she could not do so herself, which lead to her drug abuse. Additionally, defense counsel explained that Defendant reached out to Chrysalis House before her arrest and that she was accepted there for treatment. Defense counsel stated that Defendant has not yet had the benefit of inpatient treatment and still has a bed waiting for her at Chrysalis House. Defense counsel explained that Chrysalis House wants to treat Defendant for her drug addiction and mental health issues related to domestic abuse, which she has not been treated for before. Defense counsel argued that treatment is suitable in this case given the significant trauma issues Defendant has, particularly due to experiences in the last month, and that Defendant has a strong desire to be sober and better herself.

Defendant addressed the Court directly and explained that she agreed with her lawyer's statements. Defendant stated that she knows that domestic violence counseling will help her and that she would appreciate the opportunity to participate in treatment where her two-year-old child will be allowed to be with her. Defendant expressed that she has been through a lot in the past

6

year, particularly in the last month, and asked that the Court take her desire for treatment into consideration.

The Court asked Officer Biggs to address whether Defendant has had the benefit of inpatient treatment while on supervision thus far, and Officer Biggs explained that Defendant participated in inpatient treatment through the Chrysalis House from June 5, 2017, to October 11, 2018, three months of which were paid for under contract through the USPO, with the remainder paid for by other means. Defendant agreed that she had participated in inpatient treatment for a period beginning on June 5, 2017.

## II.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was originally convicted of conspiracy to manufacture a detectable amount of a mixture or substance containing methamphetamine, a Class C felony. *See* 21 U.S.C. §§ 846 and 841(b)(1)(C). Her conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3). Under 18 U.S.C. § 3583(h) and 21 U.S.C. § 841(b)(1)(C), there is no maximum term of supervised release that may be re-imposed.

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one

violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade B violation with respect to Violations #4 and #8, and a Grade C violation with respect to Violations #3, #5, #6, and #7. Given Defendant's criminal history category of I (the category at the time of her original conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is four to ten months. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the Guidelines Range.

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because she possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of 18 U.S.C. § 3583(g)(1). *See United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court was "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Nothing in the record supports application of the exception. Defendant has one of

the most extensive substance abuse treatment records the Court has seen.[4] The Court has provided Defendant with every opportunity it can to allow her to better herself and overcome her addiction and she has repeatedly breached the Court's trust, including testing positive for illicit substances while participating in that treatment.

### III.

The Court has reviewed the entire record, including the Report and its accompanying documents, and Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. The Court's consideration of all the statutory factors informs its recommended sentence of revocation with twelve months and one day of imprisonment with no term of supervised release to follow. *See* 18 U.S.C. §§ 3553(a), 3583(e). Likewise, the parties addressed the statutory factors in making their sentencing recommendations to the Court.

The Court first considers the nature and circumstances of Defendant's underlying conviction. The nature and circumstances of Defendant's underlying are troubling. She was involved in a large-scale drug trafficking conspiracy and was responsible for obtaining ingredients for the manufacture of methamphetamine. Defendant's current violations involve the use of marijuana and methamphetamine. The risk exists that she will continue to use drugs and fall back into serious criminal behavior, including drug trafficking.

---

[4] While on supervised release, per the USPO, Defendant has participated in numerous treatment programs. From February 19, 2015 to January 1, 2016, she attended outpatient substance abuse counseling at Cumberland River. In February 2016, she participated in an intensive outpatient program provided by the Trillium Center and the Briscoe Clinic at Baptist Health in Corbin. From June 5, 2017 to October 11, 2018, she participated in inpatient treatment at the Chrysalis House. In June 2019, Defendant attended individual counseling at Cumberland River Behavioral Health. In November 2019, she participated in a Suboxone treatment and outpatient counsel program through Dayspring Health. Finally, and most recently in March 2020, Defendant participated in a Suboxone treatment program through Denova.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public, which heavily influence the Court's recommended sentence. The Court credits Defendant for her acceptance of responsibility, however, there continues to be a strong need to protect the public and deter further criminal conduct. Defendant's drug use is felony conduct that necessitates upstream drug trafficking to feed her addiction and harms the community. The Court empathizes with Defendant and her struggles recently, especially given the COVID-19 pandemic, but it is no excuse for her criminal behavior. Defendant must learn to cope with her personal struggles in a constructive way instead of turning to drugs. Finally, Defendant's current violations nearly mirror the conduct that resulted in revocation in 2017.

The Court must also consider whether a defendant needs any education, training, or treatment. Defendant has an extensive history of drug treatment. In the Court's mind, there is no further treatment through public resources that can be recommended which will help Defendant. From here on out, she will be on her own in seeking help with her drug addiction and mental health issues.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines Range. Yet, in this case, the Court believes a sentence outside of the advisory Guidelines Range is appropriate. In such a scenario, the Court must provide a "specific reason" for going outside of the Guidelines Range. *See United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (requiring that any deviation from the Guidelines Range be supported by a specific reason that justifies the extent of the deviation). A sentence of twelve months and one day is appropriate in this case. Defendant has continually breached the Court's trust throughout her entire case, including the revocation of her bond during pre-trial

proceedings, repeated 12A approvals allowing no action be taken after multiple failed drug tests, and the current conduct at issue. The breach of the Court's trust in this case is egregious. Defendant was previously sentenced to six months for similar violations, so, in the Court's view, the sentence cannot be less than six months. Twelve months and one day allows for Defendant to earn good time credit while incarcerated and potentially reduce her sentence by up to two months. This is one last effort by the Court to prove to Defendant that, if she complies with the rules, good things will happen.

In fashioning its recommended sentence, the Court must take into account whether an additional term of supervised release is warranted. In this case, no additional term of supervised release is recommended. Defendant has been given every opportunity to comply with the conditions of her supervised release and has repeatedly flouted the trust instilled in her by the Court. While she has accepted responsibility for her conduct, that alone is insufficient to evidence that she is dedicated to compliance and overcoming her drug addiction. The Court cannot justify continuing to expend the USPO's resources on an individual that refuses to comply with conditions.

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant has repeatedly continued to breach the Court's trust, including the present violations which are similar to the violations underlying

11

her 2017 revocation. In addition to her 2017 revocation, Defendant has previously breached the Court's trust when she violated her pre-trial bond, plus she committed many violations which resulted in no action being taken. Further, Defendant had the benefit of a significant downward departure at her original sentencing. Notably, Defendant's 2017 revocation sentence was slightly below the middle of the Guidelines Range. Accordingly, incarceration is required to protect the public from continued drug abuse, deter further criminal conduct, and address Defendant's multiple breaches of the Court's trust. For the reasons discussed above, the Court finds that twelve months and one day of imprisonment with no supervision to follow is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

## IV.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of violations 3 through 8;

(2) That violations 1 and 2 be dismissed upon motion of the United States;

(3) Revocation and imprisonment for a term of twelve months and one day; and

(4) No term of supervised release to follow.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 1397. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Within

**SEVEN DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 28th day of May, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge